Good morning. May it please the Court, Counsel, I'm Gary Feinerman on behalf of META. I'd like to reserve five minutes for rebuttal. The plaintiffs in this case sought Mark Zuckerberg's deposition right out of the gate in their initial witness list. They did so before taking a single deposition and despite not having served a single interrogatory or request for admission concerning Mr. Zuckerberg's involvement in the pertinent events. I agree with that, but that's not how the case comes to us, obviously, right? I mean, I guess it's an interesting question to what degree we can take the prior history of the proceeding into effect, but now we have a case where they have taken some depositions. There is at least some suggestion that Mr. Zuckerberg may have some knowledge unique to him, and it was pretty carefully tailored to a three-hour deposition. I mean, I guess, first of all, we have to decide whether the Apex Doctrine should even apply in the Ninth Circuit, so maybe you could start with that. But secondly, if it does, why don't some of these narrow tailoring alleviate some of the concerns? Sure thing. I'll start with whether the Apex Doctrine actually exists in this circuit. I'll note that the plaintiffs did not make that argument. They did not deny the existence of the Apex Doctrine in the district court, and in our view, the reason that they made that argument here is they realized that if the Apex Doctrine does exist, the approach that the district court took is untenable because it renders the doctrine a tautology. But in terms of whether the Apex Doctrine exists, the plaintiffs argue it's unmoored from Rule 26. We argue that it maps onto and it's wholly derivative of Rule 26. The doctrine asks two questions. Well, if it is, then why does one need a doctrine? I mean, why don't we just apply Rule 26? It is a way of applying Rule 26. The Apex Doctrine is a way of applying Rule 26 in a situation that recurs often. It provides a rubric for courts. What exactly is the situation? Situation is when one side notices for deposition an Apex executive on the other side. An Apex executive includes the president of a large non-profit? Does it include the president of the union? Does it include the ... How far down the list does it go? I mean, it creates its own problems because we don't know what it applies to. It depends on the circumstances. Although, in this case, wherever the line is, Mr. Zuckerberg certainly falls on the side of the line where the executive is an Apex executive. He's the CEO of Meta. And to your question, why do you ... But that's relevant to whether you want to have a doctrine. I mean, right? In other words, one has to have limits to the doctrine or a sense of where the doctrine applies to. Right. And there's nothing unusual about the Apex Doctrine. It provides a road map or a rubric to district courts and courts of appeals as to how to apply the rules, Rule 26B and 26C, in a recurring situation. And it's no different from doctrines that exist and that have been developed based on judicial experience over the years, developed to implement constitutional, statutory, or rules-based principles. We mentioned the Shelton Doctrine, which is a doctrine that courts apply to decide whether one side's attorney ... One side ought to be able to depose another side's attorney, consistent with Rule 26C1. There's the McDonnell-Douglas test, very familiar, which is the burden-shifting test designed to implement Title VII. There's which is designed to implement the Equal Protection Clause in the context of jury selection. Help me understand the lay of the land on where we're at. Ninth Circuit has not adopted it. We've said very little about it, which is a little bit surprising that we've gotten this far without weighing in on this issue. The Sixth Circuit has rejected it. Is that correct? That's right, in Serrano. And where do the other circuits come in on this? There are two circuits that have adopted the Apex Doctrine, although not by name. They've applied it, but have they analyzed it? Yes, they have. There's the Fifth Circuit in Salter and the Tenth Circuit in Thomas, and I think Salter is a better example for a couple reasons. One is it involved one side's effort to take the deposition of Upjohn's CEO and in affirming the district court's decision to not allow that to apply the Apex Doctrine, although it wasn't called that at the time, and declined to allow that deposition to proceed. The Fifth Circuit noted that Upjohn's CEO was extremely busy, and the plaintiff did not first try to depose employees with more direct knowledge of the pertinent facts. And again, although Salter didn't use the term Apex Doctrine, numerous district courts, including Beeman in the Northern District of Alabama, and Solarity in the Northern District of California, recognized that Salter applied the doctrine. You're right, Your Honor, that the Ninth Circuit has not come down one way or the other. The plaintiffs argue that the Blankenship case from 1975 rejected the doctrine. If that were true, it would come quite as a surprise to the numerous district courts in this circuit that have applied the Apex Doctrine over the past decades. It's been mentioned about 100 times over the past five years. And Blankenship did not mention the Apex Doctrine, which stands to reason because it hadn't taken on a name at that point. But if anything, Blankenship's analysis sounds in of the Apex Doctrine. It ordered George Hurst's deposition upon a finding that he likely had unique knowledge that others did not. But it's not your position or the suggestion of the Apex Doctrine that you can never get the deposition of the CEO. So at some point, in some cases, some plaintiffs are going to get the deposition of the defendant CEO. Why isn't this? Well, wouldn't we review for abuse of discretion? And essentially, the district court concluded at that point it arrived in this case. Right. The district court did conclude that the Apex Doctrine was satisfied in this case, but only because it took a very cramped view of what the doctrine requires, as we called it in our papers, a tautological view. It's hard to say it took a cramped view when there is no view from the Ninth Circuit. Right. I mean, a cramped view in terms of the two general camps that district courts have fallen into. And the camp that the district court in this case fell into is the camp that looks at the Apex Doctrine kind of as the tautology. The question that it asks, that this, that camp asks, which can lead only really to one answer, which is, does the executive have unique knowledge about what that executive was thinking when involved in a company action or a decision? And the best example of this is on pages 13 to 14 of the addendum. I mean, in this instance, the district court focused on and required the deposition to be focused on specific matters in which we know that the deponent was present and had to make a decision. And that the tautology that you're thinking about is really more in the realm of, well, every CEO, you know, the buck stops here, basically. This is not a buck stops here deposition that's been ordered. It's about very specific matters as to which he was present or was required to have knowledge. Right. But the basis for the court's ruling had to have been the tautological view of the Apex Doctrine, which is just untenable because it leads to only one answer. Well, I'm not understanding why that's the case. There was a meeting, as I understand it, at which Mr. Zuckerberg was definitely present and which a particular decision was made. And he was going to be deposed about that. It's not some rubber stamp he did, you know, when things went up the line. Right. Actually, Mr. Mudd testified that at that particular meeting, which is the end, I know I'm getting into the record here, but at the April 2021 meeting, there was not a decision that was made. There was a direction that was given. And the question is, how do we know what happened at that meeting? Mr. Zuckerberg didn't make the decision for himself. He made the decision for the company. And there are there were others in the room. There are others that advised. That's my question is, if you're right, the Apex Doctrine applies. It seems like is your position the only time that it would be appropriate to get the CEO's deposition is if he made a decision with no one else in the room, because if he made a decision with others in the room and there was discussion, your argument, I think, would be, well, you could always go to someone else in the room and get their deposition about what was said and how the meeting went down. Precisely. Well, does that does that apply it too narrowly? I'm wondering. It doesn't, because, again, if at the end of the day, if you if if the deposition is taken of the three or four other people in the room and they say, I don't know why the decision was made, I don't remember. Then you could get the CEO's deposition. Right. And that's the second question that the Apex Doctrine asked, which is, have you exhausted other less burdensome means? So here, walk us through, because some exhaustion was done more than when it was when the deposition was first requested. Some was not. What's your bet? I mean, Michael Prodi, I think, was one that you would say you've got to at least oppose him before. Now, they're also limited by numbers, though. So, I mean, you you it's a little hard to say, hey, you've only you only get 20 depositions and all of a sudden they start using up four or five, six of these just to exhaust. I mean, would you agree that the number of depositions would need to be extended if they were being done for exhaustion purposes? That's a that's a case by case examination. I will note that at the time that Mr. Sherman and Mr. Prodi were disclosed and they didn't really have to be disclosed because their positions are very public. Mr. Sherman is the is the designated compliance officer. And Mr. Sherman was not deposed either. He was noticed up, but then canceled. Is that correct? Right. He was noticed up and he was canceled the day after the district court overruled our objections to the magistrate judge's order. And Mr. Sherman actually subbed in for Ms. Egan, who was the chief privacy officer. Ms. Egan was deposed. She was not deposed. She had she had a personal situation that's under seal and that we subbed in Mr. Sherman for her. And she could not. So because of that, she could not be deposed. She would not be part of the exhaustion that you would be. That's right. There was an agreement between the parties that Mr. Sherman would sub in for Ms. Egan. So there was Mr. Prodi. And by the time that Mr. Sherman was subbed in for Ms. Egan, the plaintiffs had taken only six or seven of their depositions. And I should also note that when the plaintiffs took the deposition of Fred Leach, who's a third person, he was the 30B6 witness on consent issues. And the plaintiffs did not ask him one question, one question about this opt-in proposal. There seems to be a little bit of a dispute about that. I think we'll hear from them, but I think they would say they did ask questions about that. Of Mr. Leach? Maybe of Mr. Mudd. But Mr. Mudd was a former employee who had left in 2022. He was deposed in early 2025. It stands to reason that having been away from META for at least two years, his memory of that meeting would have been fuzzy. The plaintiffs should have gone to Mr. Prodi, should have asked Mr. Leach the questions. So who is the one who, in addition to Mr. Zuckerberg, signs the statements required by the consent order? Right. That's Mr. Prodi. He is a co-certifier. His was not taken? His was not taken. And in addition, Mr. Prodi is in charge of producing the quarterly reports that are given to Mr. Zuckerberg. So he, if anybody, has firsthand knowledge, it's Mr. Prodi. And Mr. Zuckerberg cannot possibly have unique firsthand knowledge of the matters pertinent to the FTC order. That's Mr. Prodi. The plaintiffs have not tried to take Mr. Prodi's deposition. They went straight for Mr. Zuckerberg. Can we go back for a minute to the existence of the Apex Doctrine? The Sixth Circuit's reason for disapproving it was that there appeared to be a clash with 26C1 in terms of where the burden of proof lie and the fact that the person resisting discovery is required to show good cause rather than the other way around. So what is your response to that? There's nothing inconsistent with a burden. Where the burden lies, we think it lies on the party seeking a deposition because the Apex Doctrine erects a rebuttable presumption. A rebuttable presumption is a shift of the burden. That's what a rebuttable presumption is. Right. I don't think that's integral, that the burden shifting is placing the burden on the party wanting to take the deposition is integral to... And to the extent we had a concern about that, couldn't we just put the burden on you? I know you don't want it, but I assume that you would say you'd rather have the Apex Doctrine recognized and have the defendant bear the burden. Right. We'd rather have the Apex Doctrine recognized. We'd rather have it recognized in a non-tautological way. We would not die on the hill of having the burden placed on the other side. I don't see how you can't have the burden because the doctrine can't be free-floating. It's got to be rooted in the text of the rules. And under 26C, the party seeking protective order has the burden to show good cause. And so therefore, the burden seems to be on you, even under the Apex Doctrine. That's right. But then the question is what happens if the party wanting the deposition... Well, if you make a threshold showing that otherwise establishes good cause, the other side had probably better come forward with something. Exactly. And it's not... Even if the burden rests on the plaintiffs here, it's not as if Meda can show up... But your showing, as I understand it, is only simply that Mr. Zuckerberg is the CEO of Meda. That's your showing. No, that's not the showing. That makes him an Apex executive. And then the question, the Apex Doctrine asks two questions. The first is... I'm sorry, Your Honor. No, go ahead. The first is whether the executive possesses unique, firsthand, non-repetitive knowledge of the relevant facts. And the second is whether the party seeking the deposition has exhausted, without success, less intrusive methods of getting the information in question. But first, you have to get into this doctrine, right? You have to walk your way into it. And you do that without any specific showing of burden or anything, only his position. Right. I think what judicial experience has, at least as the courts have recognized judicial experience has shown and what common sense tells us, is that CEOs are extraordinarily busy. CEOs of public companies, large public companies, are extraordinarily busy. Right. But you would agree that just coming in and saying, we're a big company, Zuckerberg's the CEO, that doesn't make a prima facie showing. You have to show more than that. Evan, you would agree with that, right? Yeah, yeah. Yes. And I was about to say, it's not like Mattick shows up and says, Zuckerberg's CEO, we're done, no deposition. Mattick has to come forward with arguments and- And say, hey, which you have done here, it seems. Here's some other individuals that might be able to satisfy this. Exactly. And Zuckerberg, and you've produced individuals who could testify to what happened at the hearing. Exactly. Prodi has more firsthand knowledge of matters involving the consent order. What you have to show under 26C1 is that good cause at the deposition will result in annoyance, embarrassment, oppression, or undue burden or expense. Right. And you think that the two prongs of the Apex Doctrine are a substitute for that? It maps entirely on. The two prongs of the Apex Doctrine map entirely onto Rule 26C1, as well as 26B2, which says that the court must limit discovery if it's cumulative or duplicative, or if the evidence can be obtained from a more convenient or less burdened source. And what the Apex Doctrine does, much like the McDonnell-Douglas test, the Batson test, the Shelton test, is it provides a rubric. It provides a roadmap for courts to apply those rules-based principles in the context of an Apex executive. I see that I'm well past... Yeah, if you want to reserve time, we'll give you time for rebuttal. All right. Thank you so much. Your Honors, may it please the court. My name is Andre Muir for the plaintiffs. If I could start with the issue of whether to adopt the Apex Doctrine. We disagree with MEDA as to how many... Microphone closer. Yes, Your Honor. Can you hear me better now? Thank you. We disagree with MEDA as to its discussion of how many federal circuits have adopted the Apex... You don't think the Fifth and the Tenth Circuit have adopted it? No, Your Honor. Our understanding from our research, and there are a number of state Supreme Courts that have sort of canvassed the area, have identified only the Sixth Circuit as having considered whether to adopt the Apex Doctrine... And rejected it. And rejected it. As Judge Berzon pointed out, the primary problem is the burden shifting. So if we just say that under Rule 26C, the burden is on the party seeking the protective order to establish all the elements, why isn't it that the general contours of the Apex Doctrine as developed in the lower courts are consistent with the general standards applied in Rule 26C? So just fix the burden, and then otherwise it fits. Well, that would be different from what MEDA is arguing, and MEDA didn't carry its burden because... I think we just heard them say that they'd take the burden so long as the rest of the doctrine is understood to be consistent with the rule. Well, but I don't think that's adopting the Apex Doctrine. That's just asking that as part of Rule 26C, can a party come forward and raise these other reasons for why it's entitled to protection? For example, there's this other witness who you should be deposing, and there's some burden to deposing the witness that you've identified. But I think the idea is that the general standard under Rule 26C is stated at a very high level, but it's often the case when you apply a general standard to recurrent fact patterns, that courts start to notice that certain factors recur in those fact patterns, and then you develop a special doctrine about there. So one recurrent form of abuse or annoyance that might be addressed by the rule is when you get a deposition of the CEO of a large organization who sees thousands of decisions and is a very busy person, what burdens do you have to do? That's the Apex Doctrine in Rule 26C. What is wrong with that? Why isn't that a correct analysis of 26C? Because still, this is what the Serrano Court said, the Sixth Circuit, is that a lot of the discussion about uniqueness, a lot of the discussion about exhaustion is really a discussion about relevance. And when the Apex Doctrine is asking the plaintiffs to show that there is heightened relevance from a particular witness who's been identified. But what's not happening is there isn't, the defendant is not coming forward and providing particularized and specific enumerations of harms. Those identified in Rule 26C, they're relying on... I don't, I mean, how is that possible? Of course they're coming forward. I mean, they're saying Zuckerberg is busy. Even the district court recognized the CEO of a company is busy. That was the whole basis for limiting the deposition to three hours. So, I mean, I don't understand your argument that they haven't come forward with harms. They have. It may not satisfy you, but they've certainly come forward with those. No, those are, the harms that they've identified, that CEOs just generally tend to be busy, those are exactly the types of general and conclusory and true. I mean, if Mr. Zuckerberg allowed to be deposed in every single case that Meta had, he could never get his job done. But nothing prevented Mr. Zuckerberg from coming forward with an affidavit and explaining specific circumstances as to why this deposition in this context was burdensome. He never put forth a declaration explaining that he didn't have personal knowledge, he didn't have unique knowledge, he didn't do any work there. The district court didn't even require that. It didn't because it applied the Apex Doctrine and it shifted the burden to plaintiffs. I mean, I just, I feel like those aren't your strongest arguments. Well, your question, what you're saying is that if the burden is shifted, the shifted burden should include some demonstration of the fact that there is undue burden rather than simply his position. Because everybody, many, many people are busy. I'm sure at Meta there are 200 people who are extremely busy and extremely likely to be deposed in lawsuits. So what really troubles me about this sort of per se doctrine as opposed to needing individual showings is, you know, what its parameters are, who are we talking about and why? That's exactly right, Judge Berzon. And that's why Serrano said you can't just rely on these stereotypes. It may be true, Judge Nelson, that CEOs are very busy and I don't doubt that they are. But in particular cases, under Rule 26C, you cannot just rely on those sorts of stereotypes. Well, I worked out that the chef in a fancy restaurant, he's pretty busy. Yes. And there are courts that say just being busy doesn't allow you to get out of a deposition. You have to consider the circumstances. And I don't think anybody's saying that the CEO can never be deposed. That's not true. But where there's other alternatives to get there. And here, I mean, I'd be interested in hearing what you have to say about Michael Pratty, because it seems like Michael Pratty would be, would give you almost exactly what you are looking for. We disagree with that. First, Michael Pratty was never disclosed in the Rule 26A disclosures. Michael Pratty, the first time he became, he was brought to the plaintiff's attention and the court's attention was at the motion for reconsideration stage. That's in the motion. I know, but the district court put a lot of weight in ordering the deposition of Mr. Zuckerberg, that he signs these reports under the FTC order. But so does Mr. Pratty. And yet you didn't go to Mr. Pratty. And so the same rationale that the district court thought justified getting Zuckerberg, you didn't exhaust the other alternative on that exact same ground. Mr. Pratty was not identified until the motion for reconsideration. And the FTC order wasn't the sole basis for the court's ruling. The court also relied on Mr. Mudd's testimony about a 2021 meeting where there was consideration of an opt-in. Was Mr. Pratty present at that meeting? I don't know whether he was, but the question there, Mr. Mudd testified that Mr. Zuckerberg was a decision-maker in that case. And then when we asked Mr. Mudd about Mr. Zuckerberg's decision-making, defendants objected that that was speculative, and Mr. Mudd couldn't speak to Mr. Zuckerberg's decision-making. I have a more generic question. What is the standard of review in general of discovery decisions of this kind? In a regular appeal, it would be, I believe, an abuse of discretion. So is, for some reason, the fact that we're on mandamus here make it less than abusive? I mean, a less stringent standard of review than abuse of discretion? It's even more difficult to establish. So it has to at least be an abuse of discretion. It has to be a clear abuse of discretion. And even if this court would have made a different determination, even if this court thought a mistake was made, that's not enough to show clear error for mandamus. Is this... Right. I think the question that at least I'm grappling with is, is there legal error here because, number one, the Apex Doctrine or... I mean, to a certain degree, I'm not sure it matters what we call it. If it's just an offshoot of Rule 26 or the Apex Doctrine, whatever it is you want to call it, does it exist and does it require exhaustion of alternative avenues? Because if it does require exhaustion, I don't see how you meet it. At least with Mr. Prodi and perhaps with Mr. Sherman. You agree Mr. Sherman was never deposed, right? No, Mr. Sherman, I believe, was deposed. Oh, I thought you canceled it, but he was later deposed after you canceled it? Oh, he was not deposed. I'm sorry. Yes, yes. No, I know. We've got a lot going on here. I apologize. No, it was canceled because at the time, I don't believe we had... But Leach was deposed. Yes. And what about my recollection that there was some disagreement? I thought Meta said you never asked a single question about these decisions. And I thought you in your brief had come back and said, no, we disagree with that. We did. Can you clarify that? I don't believe we asked certain questions about certain decisions, but part of that was because we had gotten this order and our position was that Mr. Zuckerberg had unique knowledge, and we wanted to ask about Mr. Zuckerberg's own decision-making based in part on Mr. Mudd's testimony that Mr. Zuckerberg had made a decision. That almost acknowledges you didn't exhaust because, I mean, you seem to be saying, well, we had a witness that we could have asked these questions to, and we chose not to because we wanted to ask Mr. Zuckerberg. Well, again, the magistrate judge did find exhaustion based on these facts. I know, and that's my question, is did the... Well, actually, I don't think the magistrate did. Maybe on reconsideration. I thought exhaustion really only came out once it went to the district court. Yes, but on reconsideration, the magistrate judge did go through exhaustion, including as to whether we... And the question in my mind is if the Apex Doctrine applies, which the magistrate judge and the district court apparently assumed it does and tried to apply it, if it does exist, did they apply it legally accurately? And that's my hang-up because I'm not hearing anything here that's giving me comfort that this would not be an easy fix for you to take one or two or three more depositions and figure it out because my supposition is you could get exactly the information that you want. Well, I'm not sure we could get the information we wanted, Your Honor. Maybe, but you haven't tried. Well, I'm not sure it's correct that we haven't tried because we took numerous depositions. We served a number of discovery, different discovery and documents. You just told me that you had Mr. Leach in a deposition and you held off asking the questions because you wanted to save them for Mr. Zuckerberg. Well, there were certain... I don't understand how that satisfies exhaustion under any proper application of that rule, if it applies. Well, I don't believe that the exhaustion requirement does apply as strictly as the question sort of suggests. And the district court... Well, if we applied, if we washed out the Apex Doctrine, isn't there still a version of the exhaustion doctrine that's in 26 itself? Yes, but it's a balancing test versus the need for the information. And there's a difference between asking about the FTC consent order, which I believe Mr. Zuckerberg would be a proper witness for, but also asking about the April 2021 meeting where Mr. Zuckerberg, according to Mr. Mudd, was the decision maker, was in attendance. I don't see how Mr. Leach could testify as to certain questions that only Mr. Zuckerberg could answer about his decision. Part of their argument is that the district court relied on a tautology, that every CEO who makes a decision that's presented to him or her on any question has unique knowledge as to why he or she did that. And given, you know, the large numbers of issues across their desk, this is basically an authorization to depose CEOs, because they're always going to have unique knowledge about this. And therefore, it's always going to be granted. I don't believe the court relied on a tautology and simply the status of Mr. Zuckerberg as CEO. The court looked at the testimony of Mr. Mudd. A CEO who makes a decision. Well, there are CEOs who make decisions whose testimony should be obtained. And the mere fact that multiple people were at a meeting... Right, but does the fact that the CEO made a decision necessarily mean that, therefore, that CEO has unique knowledge? Since no one else has that unique knowledge, therefore, exhaustion is satisfied, order the deposition. That's their theory as to what they think the district court did. Do you disagree with that? Or do you think that's a correct characterization? We think that's incorrect for several reasons. One, we do think he has unique knowledge. So we think we meet that. But two, we don't think there's a unique knowledge requirement in Rule 26C. Well, how can you say that? There has to be. Because Rule 26 says one of the considerations is whether you can obtain the information from another source. Yes, but it doesn't say the word unique. It doesn't require unique knowledge. And it's often important to ask multiple witnesses who are at the same event, their recollection of those decisions. Asking Mr. Prodi or Mr. Leach only, had we asked him, questions about a particular event, it's often permitted to explore different witnesses' recollections of different decision-making. Are we talking now about 26B? I think some of the discussion is about 26B. I know we're also talking about 26, but as of 26B, it says the court must limit the frequency or extent of discovery otherwise allowed if this discovery is unreasonable, cumulative, or duplicate, or could be obtained from other sources that is more convenient, less burdensome, or less expensive. But he did limit the extent of discovery. Yes, Your Honor. The magistrate did. Severely. Severely. I mean, in the sense of a three-hour deposition about one topic, basically. Yes, about more than one, I think. But yes, very limited set of topics. So there were limitations placed. I mean, I think as this case comes to the court as a petition for mandamus, I don't think there's any basis for MEDA to establish that there was clear error, clear abuse of discretion. It's not simply a question of whether the court abuses discretion, which we don't think it did at all. It considered all the pertinent factors. Again, I just come back to if it's true that the district court applied an incorrect application of the law, that would be an abuse of discretion. It doesn't mean necessarily, I mean, I don't think we're suggesting we would say Zuckerberg's deposition has to be quashed. But I think we would vacate the order and send it back for a reconsideration under a proper, assuming we reach that, under a proper analysis. I don't think you could say that the court misapplied the law when it did consider exhaustion. It simply reached a different outcome than the defendants would have hoped for. But that's not an error of law. The court considered those factors, exhaustion, uniqueness. Our position is the Apex Doctrine. But maybe I can put it this way. If a court has the discretion to decide that a CEO should sit for a deposition, even if that individual does not have unique knowledge and there hasn't been exhaustion, that is within the realm of discretion. That, if a district court makes that decision— I think I would agree with the way you just framed it. And the question is, is that the law? And we have to decide that. Yes. And we would say that is the law. That's consistent with Serrano, which said there isn't some— and that's how the presumption works. The presumption makes that a matter of law, that you have to— and it heightens the burden on plaintiffs to show uniqueness and exhaustion, even though in practice there has never been this requirement that you can only ask one person one set of questions. That's simply not how the truth-seeking function works. And it would really deteriorate the ability of litigants to seek the truth in discovery. Because, again, if you have multiple people at a meeting, they may have different recollections. The fact that Mr. Zuckerberg may not remember something may be important to the case in and of itself. The fact that a corporate executive comes forward and says, I don't have any knowledge of that in a declaration— The problem is— —can often be tested. Counsel, the arguments that you just made could be made in a thousand different cases where Meda is a defendant. And it just is unfeasible. There has to be some sorting out when you get to Zuckerberg on where he— which cases he has to sit for. And, I mean, I think you have to bear a burden that somehow your case is unique from the thousands of others out there. And I haven't heard anything about how that at least has been established at this point. —Well, I would point again to Serrano, which gave the example of Priscilla Presley. And what Serrano said is you don't need a special presumption or a special set of rules. And the courts have said it's not appropriate for Federal courts to set different standards than ones that are provided by the Federal rules. That's a question for the Advisory Committee. It's not a question for this Court. Maybe there are policy reasons— —We were applying 26B and C directly. How would this have proceeded? —One, I think Meda should have come forward with a declaration for Mr. Zuckerberg establishing— —And establishing— —One of the enumerated— —What he was doing. —Yes, Your Honor. —Precisely what he was doing. —Yes, Your Honor. —That he didn't have unique knowledge or he didn't have— either he didn't have knowledge or he wasn't a relevant person in some fashion. —Yes, Your Honor. —There were other people who had the same knowledge or had— —Yes, Your Honor. Meda had those tools available to them. They did not do so. We cited the case involving Priscilla Presley also where she— her deposition was sought. She came forward with a declaration that put forth that type of information. Meda never did that. They relied on the Apex Doctrine. —Well, they relied on a fact which then shifted the burden. —Yes, Your Honor. And that fact was the mere fact that he's a CEO. His mere status— —I think they gave more than that. But I understand your point. —Okay. Well— —You are out of time. —I appreciate the extra time, Your Honor. —No, we appreciate your argument. Thank you. —Thank you. —We'll give you two minutes for rebuttal. —Thank you, Your Honor. Michael Pratti was the deputy compliance officer. He certified every quarter. That was publicly available information. Plaintiffs' lawyers certainly knew— —What's your response? They said that at the deposition of Mudd, you objected to questions that were aimed at getting at Mr. Zuckerberg's information. So therefore, you obstructed the very sort of alternative routes that you say that they should have exhausted. What's your response to that? —Right. That was Mr. Mudd's deposition. And there were speculation or foundation objections. There was no instruction not to answer. And Mr. Mudd—it's at docket 1020-4, Exhibit 1—Mr. Mudd went on and answered those questions. So there was no obstruction. It's just objections that lawyers make at depositions about foundation and speculation. The plaintiffs certainly knew about Mr. Pratti. They didn't need to have him disclosed. It's public that he's the designated compliance officer. Mr. Leach was the Rule 30b-6 witness for Meda. He was literally the company at that deposition. He could—and he was actually in the room in that April 2021 meeting. And the plaintiffs said that they didn't want to ask him a question about the opt-in proposal that they now say is the reason they need to depose Mr. Zuckerberg. That's astonishing. It's absolutely astonishing. Mr. Leach was the company. The company made the decision. Mr. Zuckerberg is the CEO of the company. Would you produce—let's see, this is Mr. Leach we're talking about. Right. Would you produce him again if they said, okay, we made a mistake? Or you're saying, hey, you had your shot? I can't say whether we did if it was, you know, if it was either or. What was Mr. Leach's position? I'm sorry? What was Mr. Leach's position? I believe he was—he's a deputy privacy officer, but he was the company's Rule 30b-6 witness, meaning that he was testifying as the company on consent issues. And the plaintiffs did not ask him a question about— That's another issue that we haven't really delved into. But I don't understand why Rule 30b-6 doesn't just solve most of these problems anyway, because the company could speak to issues and bind the company in ways that Mr. Zuckerberg might not even be able to. That's absolutely right, particularly with respect to Mr. Leach, who, as we mentioned in some of the declarations, prepared for 30 hours for his 30b-6 deposition. When was Mr. Leach revealed? I'm sorry? When was Mr. Leach revealed or presented as a 30b-6? He was presented on a number of topics, including— But when? When was he— I believe his deposition took place in the spring of 25. But he was—what happened is the plaintiffs asked for a number of Rule 30b-6 topics. Before or after Mr. Zuckerberg's deposition was noted? I believe it was after the plaintiffs asked for Mr. Zuckerberg's deposition, but of course before the deposition took place, because the deposition hasn't taken place. I see my time is up, unless there are any further questions. Okay. Thank you. Thank you to both parties for your arguments in the case. The case is now submitted.
judges: BERZON, NELSON, COLLINS